IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 4:06CR3123 |
| v. | ) | |
| | ) | **MEMORANDUM** |
| ROSA ADELIA-MARTINEZ, | ) | **AND ORDER** |
| Defendant. | ) | |

This matter is before me for initial review[1] of the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 motion") filed by the defendant, Rosa Adelia-Martinez. (Filing 115.) For several reasons, Adelia-Martinez claims that her appointed lawyer, Michael D. Nelson, was ineffective.

No matter how liberally it is construed, the motion is insufficient and the files and records conclusively disprove the claims. Thus, the motion will be denied. I next briefly explain the reasons for my decision.

---

[1] Rule 4(b) of the *Rules Governing Section 2255 Proceedings for the United States District Courts* provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

## I.  BACKGROUND

On August 23, 2006, Rosa Adelia-Martinez was charged with conspiracy to distribute methamphetamine.  (Filing 1.)   Mr. Nelson, a very experienced and an extremely dedicated lawyer, was appointed to represent the defendant.  (Filing 13.)

*Plea*

On November 27, 2006, the defendant appeared before Judge Piester for the purpose of pleading guilty.[2]  (Filings 25, 31.)   The defendant executed a lengthy petition to enter a plea of guilty that was written in Spanish and English.  (Filing 26.) She also entered into a written plea agreement.  (Filing 27.)

At the hearing before Judge Piester, an interpreter assisted the defendant, counsel and the judge.  (E.g., filing 31, at CM/ECF p. 2.)  The defendant was informed of the charges and penalties.  (Filing 31, at CM/ECF pp.  3-5.)   The defendant told Judge Piester that she "had sufficient time to discuss this [case] with [her] attorney so that [she could] enter a plea today[.]" (Filing 31, at CM/ECF p. 5.)

Judge Piester then proceeded to thoroughly question the defendant under oath. The judge fully complied with all the provisions of Rule 11 of the Federal Rules of Criminal Procedure. Ultimately, the judge concluded that the plea of guilty was knowing, intelligent and voluntary and that there was a factual basis for the plea. (Filing 31, at CM/ECF p. 26.)

Regarding her lawyer, the judge asked about counsel's performance.   The following exchange took place:

---

[2]The defendant pleaded guilty to the substantive offense as well as two forfeiture counts.

> THE COURT: Mr. Nelson has been representing you. Has he explained to you the law and the procedures that apply in the case?
> THE DEFENDANT: Yes.
> THE COURT: Has he investigated the case to your satisfaction?
> THE DEFENDANT[:] Yes.
> THE COURT: And is there anything about his representation of you that you are not satisfied with?
> THE DEFENDANT: No.

(Filing 31, at CM/ECF p. 8.)

Regarding the written plea agreement, the defendant told Judge Piester that she had the assistance of an interpreter when her lawyer went over the plea agreement "paragraph by paragraph" with her. (Filing 31, at CM/ECF p. 18.) She represented that her lawyer fully explained the plea agreement to her, answered all her questions, and that she was satisfied that she knew and understood the plea agreement. (Filing 31, at CM/ECF p. 18.) When asked why she entered into the plea agreement, the defendant told Judge Piester that she had done so "because I'm guilty." (Filing 31, at CM/ECF p. 18.)

Adelia-Martinez's plea agreement contained a cooperation provision. (Filing 27, at CM/ECF pp. 3-4, ¶¶ 7-8.) However, the defendant told Judge Piester that she understood that the government had not promised to seek a reduction in her sentence and she represented that no one had told her that she "would get an especially light sentence" because of the plea agreement. (Filing 31, at CM/ECF pp. 19-20.)

The judge had the government's lawyer state a factual basis for the plea and counsel did so at great length, clearly establishing the defendant's involvement in all the elements of the crime. (Filing 31, at CM/ECF pp. 20-22.) The defendant told Judge Piester that the government's recitation of the facts was true. (Filing 31, at CM/ECF p. 23.) She added that "I got involved in selling what I shouldn't have sold," she admitted that she was "dealing with . . . methamphetamine" and she "knew

that was illegal." (Filing 31, at CM/ECF p. 23.) She further confirmed that she was "responsible beyond a reasonable doubt for at least 500 grams but less than 1-and-a-half kilograms of a substance or mixture containing methamphetamine." (Filing 31, at CM/ECF p. 25.)

In a statement that would come back to haunt her, the defendant also volunteered the following regarding her boyfriend and co-defendant: "I plead guilty because I know I'm guilty, [but] Luis Antonio Dominguez is not guilty." (Filing 31, at CM/ECF p. 23.) Despite her attempt to exonerate him, Luis Antonio Flores-Dominguez subsequently entered a guilty plea (filing 46) and he was later sentenced to 120 months in prison. (Filing 82.) During his plea session, the lawyer for Flores-Dominguez told Judge Piester that his client admitted "yes, he did in fact hand out some methamphetamine to some individuals on behalf of his girlfriend/wife Rosa . . ." and "based on that, . . . he agreed that because of his actions, he was guilty in this matter." (Filing 46, at CM/ECF p. 18.)

Judge Piester issued a report and recommendation suggesting that I accept Adelia-Martinez's plea and plea agreement. (Filing 28.) I accepted the plea and, as is my practice, I deferred acceptance of the plea agreement until sentencing. (Filing 32.)

*Sentencing*

The probation officer calculated that the defendant was responsible for between 1.5 kilograms and 5 kilograms of methamphetamine. (Filing 76, at CM/ECF p. 9, ¶¶ 32-33.) Both the government and the defendant objected to this finding and both sides asked me to accept the lower quantity set forth in the plea agreement. Accepting the plea agreement, I did so. (Filing 69, at CM/ECF p. 1, ¶ IB1.)

The primary dispute at sentencing was whether the defendant qualified for the safety-valve. The government contended that the defendant failed to qualify because she minimized the involvement of her boyfriend, Flores-Dominguez. After a lengthy evidentiary hearing, I agreed with the government and overruled the defendant's objection regarding the safety-value issue. (Filing 97, at CM/ECF p. 65.)

After resolving all the objections, I determined that the defendant's criminal history category was I and her total offense level was 29. (Filing 69, at CM/ECF p. 1, ¶ III.) Because of the statutory mandatory minimum sentence, the Guidelines custody range became 120 months. I sentenced the defendant to 120 months in prison plus 5 years of supervised release in a judgment that was filed on March 19, 2007. (Filing 68.) Mr. Nelson promptly filed a notice of appeal. (Filing 70.)

*Appeal*

On appeal, Mr. Nelson argued that I erred in failing to find that the defendant was eligible for the safety-valve. The Court of Appeals disagreed, and on February 29, 2008, the Court of Appeals affirmed. (Filing 110.) The mandate was filed on March 27, 2008. (Filing 114.)

*2255 Motion*

On October 6, 2008, Adelia-Martinez filed her motion pursuant to 28 U.S.C. § 2255. (Filing 115.) In that motion she raised four claims. Condensed and summarized for clarity, those claims are these:

*Claims One, Two and Three:* Mr. Nelson was ineffective because he allowed the defendant to plead guilty without a cooperation plea agreement and because he failed to communicate with the defendant

prior to the plea hearing such that her plea was not knowing, intelligent and voluntary. (Filing 115, at CM/ECF pp. 14-19.)

*Claim Four:* Counsel was ineffective because he should have objected to the presentence report as that report failed to give the defendant a two-point role reduction. (Filing 115, at CM/ECF pp. 19-20.)

## *II. ANALYSIS*

In order to prevail on a claim that defense counsel rendered ineffective assistance of counsel, the claimant must establish two things. Those things are (1) that "'counsel's representation fell below an objective standard of reasonableness,'"[3] *and* (2) that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[4] *Nguyen v. United States*, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

An evidentiary hearing is unnecessary if the claimant makes an insufficient preliminary showing on either or both prongs *or* the record clearly contradicts the claimant's showing on either or both prongs. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face

---

[3] A judge's "scrutiny of counsel's performance must be highly deferential" and the judge must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Reed v. United States*, 106 F.3d 231, 236 (8th Cir. 1997).

[4] A "reasonable probability" is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), but it is more than a possibility. *White v. Roper*, 416 F.3d 728, 732 (8th Cir.2005). It must be compelling enough to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

*Claims 1, 2 and 3–The Plea*

Condensed, Adelia-Martinez argues that her lawyer allowed her to plead guilty without a cooperation plea agreement and without being fully informed. The files and records conclusively demonstrate that the defendant is mistaken.

Despite her assertion to the contrary, the defendant did receive a cooperation plea agreement. (Filing 27, at CM/ECF pp. 3-4, ¶¶ 7-8.) Still further, that plea agreement, and the Rule 11 proceedings before Judge Piester, make plain that the government did not promise to move for a sentence reduction. Indeed, the government merely promised to consider whether to seek such a sentence reduction *if* the defendant's cooperation was substantial. Furthermore, the plea agreement specifically stated that the defendant was not to "protect . . . any person . . . through false information or omission." (Filing 27, at CM/ECF p. 3, ¶ 7.) When the defendant attempted to falsely exonerate her co-defendant and boyfriend, she breached her plea agreement and, pursuant to the explicit terms of the plea agreement, her "cooperation [would] not be considered to be substantial and the United States Attorney, or his designate, [was] not bound to file any motions" regarding a sentence reduction. (Filing 27, at CM/ECF p. 3, ¶ 8.)

Regarding the more general question about whether Mr. Nelson properly advised the defendant regarding her guilty plea, the files and records establish without any question that Mr. Nelson performed properly. Indeed, the lengthy written petition to enter a plea of guilty (filing 26) and the thorough examination of the defendant by

Judge Piester during the Rule 11 proceedings (filing 31) prove that Adelia-Martinez was fully and competently advised.

In summary, Mr. Nelson cannot be held responsible for the defendant's own misconduct and the adverse consequences suffered by the defendant because of that misconduct. She should not have tried to protect her boyfriend after she had promised in writing that she would not do so. Still further, the record reflects that Adelia-Martinez was well counseled by Mr. Nelson regarding her decision to plead guilty.

*Claim 4–Role Reduction*

Adelia-Martinez argues that Mr. Nelson was incompetent because he failed to object to the lack of a role reduction. Once again, the files and records conclusively establish that this claim is entirely lacking in merit. Given the admission of the defendant that she distributed large quantities of methamphetamine, a role reduction objection would have been futile. Even more importantly, given the fact that the defendant was not eligible for the safety-valve, and was thus sentenced to the *minimum* prison sentence allowed by law, Adelia-Martinez suffered no prejudice by the absence of a objection for role.

IT IS ORDERED that the defendant's Motion to Vacate under 28 U.S.C. § 2255 (filing 115) is denied with prejudice. A separate judgment will be issued.

October 21, 2008.　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　*s/Richard G. Kopf*
　　　　　　　　　　　　　　　　United States District Judge